UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TNL SOLUTIONS, LLC,

Plaintiff,

Case No. 23-cv-440-pp

v.

NET LEASE CAPITAL ADVISORS, LLC
and ENVIRONMENTAL ENERGY CAPITAL, LLC,

Defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT (DKT. NO. 43) AND DISMISSING CASE WITH PREJUDICE

Several years into this case, after the defendants answered and the plaintiff filed an amended complaint, the defendants have moved to dismiss the amended complaint for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 43. Because the plaintiff is seeking to recover payments for unlicensed brokerage services, which is not permitted under Wisconsin law, the court will dismiss the complaint and this case.

## I.  Procedural Background

On March 7, 2023, the plaintiff filed a complaint in Sheboygan County Circuit Court. Dkt. No. 1. The complaint alleged that the defendants—Net Lease Capital Advisors, LLC (NLCA) and Environmental Energy Capital, LLC (EEC)—had breached a contract with the plaintiff by failing to pay the plaintiff the full amount for its services. Dkt. Nos. 1-2, 1-3.

1

On April 4, 2023, the defendants removed the case to this federal court based on diversity jurisdiction. Dkt. No. 1. The defendants then filed an answer and counterclaims for intentional misrepresentation, negligent misrepresentation and unjust enrichment. Dkt. No. 9. On May 16, 2023, the plaintiff filed a motion to dismiss the defendants' counterclaims under Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 9(b). Dkt. No. 10. In an oral ruling on August 1, 2024, the court denied the motion, ordered the plaintiff to answer the counterclaims and directed the parties to file a joint discovery plan. Dkt. No. 19. The parties filed that plan, dkt. no. 22; the court then entered a scheduling order, dkt. no. 23, and the case proceeded to discovery.

On March 2, 2026, the defendants filed a motion seeking leave to file an amended answer adding a sixth affirmative defense. Dkt. No. 38. Rather than opposing the motion, the plaintiff agreed via a stipulation. Dkt. No. 40. With the stipulation, the plaintiff filed a proposed amended complaint. Dkt. No. 40-1. The court approved the stipulation and directed the clerk to docket the proposed amended complaint as the operative complaint. Dkt. No. 41. The court denied as moot the defendants' motion to amend their answer. Id. The clerk docketed the amended complaint as the operative pleading. Dkt. No. 42.

On April 6, 2026, the defendants filed a motion to dismiss the amended complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Dkt. No. 43. The plaintiff opposes the motion. Dkt. No. 45.

2

## II.     Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to assert by motion that the complaint fails to state a claim upon which a federal court can grant relief. "A Rule 12(b)(6) motion tests 'the legal sufficiency of the complaint,' as measured against the standards of Rule 8(a)." Gunn v. Cont'l Cas. Co., 968 F.3d 802, 806 (7th Cir. 2020) (quoting Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind., 786 F.3d 510, 526 (7th Cir. 2015)). A complaint need not include detailed factual allegations, but it must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). In ruling on a Rule 12(b)(6) motion, the court takes "all of the factual allegations in the complaint as true," id., and draws all reasonable inferences in the plaintiff's favor, Roberts v. City of Chicago, 817 F.3d 561, 564 (7th Cir. 2016).

## III.    Allegations in the Amended Complaint

The amended complaint alleges that the case arose from the purchase and operation of a "bio-digester" facility in Denmark, Wisconsin. Dkt. No. 42 at ¶4. It explains that the Denmark facility was co-owned and operated by Big Ox Energy LLC (Big Ox), which is one of the current owners of defendant EEC. Id. at ¶¶5, 7, 9. The amended complaint avers that in 2013, Big Ox hired the plaintiff as a consultant to advise Big Ox on expanding the Denmark facility's

3

operations. Id. at ¶¶10–11. It asserts that because the plaintiff is not a broker (which Big Ox knew and acknowledged), the plaintiff entered into two separate consulting agreements with Big Ox to clarify the parties' roles and obligations. Id. at ¶¶11–12. The amended complaint alleges that the first consulting agreement covered the parties' agreement as to the Denmark facility, while the second consulting agreement concerned the plaintiff's consulting services for Big Ox's other bio-digester facilities throughout the Midwest. Id. at ¶¶14–15.

The amended complaint alleges that in 2013, the plaintiff approached defendant NLCA to gauge its interest in a transaction involving the Denmark facility. Id. at ¶16. It asserts that the plaintiff entered into a separate confidentiality and non-circumvention agreement with NLCA, in which NLCA promised that it would not work directly with Big Ox or use any confidential information to circumvent or compete with the plaintiff on the deal. Id. at ¶¶17–18.

The amended complaint says that the plaintiff, Big Ox and NLCA began negotiating the terms of acquisition, but that soon Big Ox and NLCA began to communicate directly with each other in violation of the terms of the consulting agreements and non-circumvention agreement. Id. at ¶¶20, 23. The amended complaint alleges that from 2014 to mid-2016, Big Ox and NLCA directly discussed NLCA's plans to acquire the real estate on which the Denmark facility stood and to lease the property back to Big Ox. Id. at ¶¶24–26. The amended complaint maintains that in June 2016, Big Ox and NLCA formed a separate entity—EEC—for their joint venture in the Denmark facility. Id. at

¶32. It alleges that the plaintiff raised concerns about Big Ox and NLCA working directly together, but that Doug Blough, NLCA's CFO, informed the plaintiff that the plaintiff had "no power and no control" in the deal and that the parties "[didn't] need [the plaintiff] at all." Id. at ¶¶34–35.

The amended complaint alleges that in November 2016, the plaintiff and the defendants (NLCA and EEC) signed a letter agreement to resolve the alleged breaches of the prior agreements. Id. at ¶¶36–37. According to the amended complaint, the agreement required the defendants to pay the plaintiff for its consulting services and to buy out the plaintiff's rights under the prior agreements between Big Ox and NLCA. Id. at ¶37. The plaintiff promised in exchange not to compete with the defendants in this field until it received its full fees. Id. The amended complaint asserts that this agreement was not a separate broker's agreement or a consulting agreement, but was "a buy-out of [the plaintiff's] rights under every and all other agreements." Id. at ¶38. The amended complaint asserts that the contract explicitly superseded all prior agreements between the plaintiff and EEC, NLCA or Big Ox and waives all other related claims. Id. at ¶40.

The amended complaint contends that the plaintiff had no choice but to sign the contract (which it alleges is "functionally" a release and settlement agreement) because otherwise, it would have been paid nothing. Id. at ¶41. It alleges that under the terms of the contract, the plaintiff's $4 million fee would be paid in five installments, with the first installment paid ten days after the contract's execution and the remaining installments paid annually thereafter

5

until the contract's fifth anniversary. Id. at ¶¶45–46. The amended complaint states that the plaintiff promised not to "provide services relating to the anaerobic bio digester business . . . to any person or entity other than EEC and its affiliates, NLCA and Big Ox" until it received the final payment on November 1, 2021. Id. at ¶¶44–46. The amended complaint alleges that the defendants made the first payment on time but have failed to make any further payments despite the plaintiff's demands. Id. at ¶¶47–50. The plaintiff alleges that it has continued to abide by the restrictive covenants in the contract to avoid breaching its own obligations. Id. at ¶51.

The amended complaint asserts a claim for breach of contract, or in the alternative, unjust enrichment, and seeks to recover the remaining $2 million due to the plaintiff under the contract. Id. at ¶¶52–63.

## IV. Motion to Dismiss (Dkt. No. 43)

### A. Parties' Arguments

#### 1. *Defendants' Brief (Dkt. No. 44)*

The defendants argue that the court should dismiss the amended complaint because the plaintiff is trying to enforce a brokerage contract when it is not a licensed broker. Dkt. No. 44 at 1–2. The defendants argue that Wis. Stat. §452.20 bars the plaintiff from collecting a commission related to the sale of an interest in a business because the plaintiff is not a licensed broker. Id. at 2–3. The contract states that the plaintiff was owed compensation for having "introduced [NLCA] to Big Ox and assisted them in connection with their program to acquire, develop, finance, construct and operate anaerobic

6

biodigester facilities," id. at 5 (quoting Dkt. No. 42-1 at 20), which the defendants argue are "plainly broker services," id. (citing Greenlee v. Rainbow Auction/Realty Co., 202 Wis. 2d 653, 665–66 (Wis. Ct. App. 1996)). The defendants assert that the amended complaint does not allege that the plaintiff is a broker, nor do public records show that the plaintiff or its principal are licensed brokers. Id. at 6–7. They argue that the contract is illegal and unenforceable because Wisconsin law prohibits unlicensed brokers from receiving brokerage commissions. Id. at 7.

The defendants contend that the unjust enrichment claim also must fail because Wisconsin law does not allow a plaintiff to enforce an illegal agreement through an unjust enrichment theory. Id. at 7–8 (quoting Abbott v. Marker, 295 Wis. 2d 636, 648 (Wis. Ct. App. 2006)). They assert that allowing the plaintiff to recover a brokerage fee without a license via an unjust enrichment claim would allow the plaintiff to recover for conduct the legislature has prohibited. Id. at 8–9. The defendants also argue that the plaintiff cannot recover under a quasi-contract theory because the plaintiff's illegal brokerage services have no market value that it can recover. Id. at 9. The defendants assert that the plaintiff cannot recover for unjust enrichment based on the agreement's non-competition provision, as opposed to the compensation for the plaintiff's brokerage services. Id. at 10. They contend that the plaintiff has not identified any benefit it conferred on the defendants through the non-competition covenant or identified any opportunities it lost due to the restriction. Id. at 11.

7

### 2. *Plaintiff's Response (Dkt. No. 45)*

The plaintiff responds that the contract is a settlement agreement, not a brokerage agreement, and so does not violate Wisconsin law. Dkt. No. 45 at 10. The plaintiff characterizes the contract as a settlement agreement because it waives the parties' rights and obligations under the prior consulting and non-circumvention agreements, rather than paying the plaintiff for any services the plaintiff performed. Id. at 11–12. The plaintiff argues that although the contract references past services it performed, reading the contract as a whole shows that it was intended to extinguish the plaintiff's claims under the previous agreements. Id. at 13–14. The plaintiff argues that the only new obligation to which it agreed was a covenant not to compete, which is not a brokerage service. Id. at 14. The plaintiff says that it isn't relevant whether the original consulting and non-circumvention agreements were for brokerage services, because those agreements were superseded by the settlement agreement. Id. at 15.

As for the unjust enrichment claim, the plaintiff argues that the validity of the settlement agreement does not impact whether it can recover. Id. at 17. The plaintiff contends that several provisions of the contract, such as the noncompete agreement, do not deal with brokerage services and so do not violate Wisconsin law. Id. at 17–18. The plaintiff asserts that any unlawful provisions can be severed from the contract and the remaining provisions enforced under an equitable theory. Id. at 19–20. The plaintiff argues that its promise not to compete with the defendants has economic value to the

8

defendants; otherwise the defendants would not have included the provision in the contract they drafted. Id. at 20–21. The plaintiff contends that any economic opportunities it lost because of the noncompete are fact questions that can be answered in discovery and need not be included in the complaint. Id. at 21–22.

### 3. *Defendants' Reply (Dkt. No. 47)*

The defendants reply that the plain language of the contract shows that it is an agreement for brokerage services, not a settlement agreement. Dkt. No. 47 at 3. The defendants argue that the contract states that the payment is "[i]n full consideration for" the services the plaintiff provided, which were brokerage services. Id. The defendants assert that parties can agree to pay for past performance in a contract without automatically making that contract a settlement agreement. Id. at 3–4. They argue that merger clauses—clauses that state that the current agreement supersedes all prior agreements—are common in commercial contracts and are not exclusive to settlement agreements. Id. at 4. The defendants maintain that similarly, waiving rights under a prior contract is not exclusive to settlement agreements. Id. at 4–5.

The defendants argue that even if the contract were a settlement agreement, it still violates Wis. Stat. §452.20. Id. at 5. They contend that the original consulting agreements were illegal agreements for brokerage services, so any claim the plaintiff had under them was unlawful. Id. at 5–6. The defendants argue that a promise to waive unlawful claims is not valid consideration for a contract. Id. at 6.

9

The defendants argue that the court cannot sever the noncompete provision because the illegal brokerage services "permeate" the entire contract. Id. at 7. They contend that the contract was intended to compensate the plaintiff for prior brokerage services, and that all other provisions are secondary to that purpose. Id. at 7–8. The defendants assert that the noncompete and confidentiality provisions were included in the contract to prevent the plaintiff from disclosing confidential information it learned while providing brokerage services, so those promises are interconnected with the illegal services. Id. at 8. The defendants reiterate that a promise not to engage in illegal brokerage services is not an economic benefit that could support an unjust enrichment claim. Id. at 8–9. They also assert that the allegations about the economic harm the plaintiff suffered are too vague, even at the pleading stage. Id. at 9–10.

B.     Analysis

1.     *Breach of Contract*

The defendants assert that the court should dismiss the plaintiff's breach-of-contract claim because it is an illegal contract for brokerage services from an unlicensed broker. Under Wisconsin law (which both parties agree applies), the plaintiffs must demonstrate three elements to establish a breach of contract claim: (1) that a valid contract exists; (2) that the defendant breached the contract; and (3) that damages stemmed from that breach. Matthews v. Wis. Energy Corp., 534 F.3d 547, 553 (7th Cir. 2008) (citing N.W.

Motor Car, Inc. v. Pope, 51 Wis. 2d 292 (Wis. 1971)). The defendants' argument goes to the first element—validity.

Wisconsin law states that

[n]o person engaged in the business or acting in the capacity of a broker or salesperson within this state may bring or maintain an action in the courts of this state for the collection of a commission or compensation for the performance of any act mentioned in this chapter without alleging and proving that he or she was a duly licensed broker or salesperson at the time the alleged cause of action arose.

Wis. Stat. §452.20. Federal courts have interpreted this provision to bar actions brought in federal court as well as in state court. See Bertha v. Remy Int'l, Inc., 414 F. Supp. 2d 869, 875 (E.D. Wis. 2006) (citing Reed v. Kelly, 177 F.2d 473, 475 (7th Cir.1949); George Nangen & Co. v. Kenosha Auto Transp. Corp., 238 F. Supp. 157, 159 (E.D. Wis. 1965)). The statute defines "broker" as a person who, in relevant part, "negotiates or offers or attempts to negotiate" the "sale, exchange, purchase, or rental of" a business or real estate. Wis. Stat. §452.01(2)(a). The statute defines "negotiate" as acting "as an intermediary by facilitating or participating in communications between parties related to the parties' interests in a transaction." Wis. Stat. §452.01(5m)(a).

The amended complaint alleges that Big Ox entered into a contract with the plaintiff to provide "consulting services," described as the plaintiff advising Big Ox "as it obtained financing for the purpose of expanding its Denmark Facility operations." Dkt. No. 42 at ¶10. The plaintiff alleges that "[i]n fulfilling part of its role under the Consulting Agreements, [the plaintiff] approached NLCA to gauge its interest in entering a transaction involving the Denmark

11

Facility in 2013." Id. at ¶16. The plaintiff and NLCA then entered into a contract in which "NLCA promised that it would not negotiate around [the plaintiff] and work directly with Big Ox." Id. at ¶17. Based on these allegations, the original consulting and non-circumvention contracts were contracts for brokerage services. The amended complaint specifically alleges that the plaintiff contacted NLCA "to gauge its interest in entering a transaction" with Big Ox; the statute defines a broker as one who facilitates or participates in communications "related to the parties' interests in a transaction" to purchase a business or real estate.

The contracts' description of the services to be provided bolsters this conclusion. The consulting agreements state that the plaintiff was to advise and "facilitat[e]" communications and negotiations between NLCA and Big Ox "leading too [*sic*] successfully funding the transaction." Dkt. No. 42-1 at 2, 7. The non-circumvention agreement states that the plaintiff and NLCA "desire to enter into discussions with one another concerning a potential business relationship" and share confidential information about a "current or potential real estate development." Id. at 13. Again, those are brokerage services as defined by Wis. Stat. §452.01. Had the plaintiff sued to enforce the consulting or non-circumvention agreements, Wis. Stat. §452.20 would have barred that suit because the plaintiff is not a licensed broker.

But the plaintiff is looking to enforce the parties' later letter agreement, which by its terms supersedes the original consulting and non-circumvention agreements. The question is whether *that* contract is a contract for brokerage

12

services. "The lodestar of contract interpretation is the intent of the parties." Huml v. Vlazny, 293 Wis. 2d 169, 196 (Wis. 2006) (citing Dieter v. Chrysler Corp., 234 Wis. 2d 670 (Wis. 2000)). To determine that intent, Wisconsin courts "give contract terms their plain or ordinary meaning." Buford v. Goeser, Case No. 23-1395, 2023 WL 8274531, at *1 (7th Cir. Nov. 30, 2023) (citing Huml, 293 Wis. 2d at 196–97).

The November 2016 letter agreement states that the plaintiff "has introduced NLCA to Big Ox and assisted them in connection with their program to acquire, develop, finance, construct and operate anaerobic bio-digester facilities" and that the defendants had agreed to pay the plaintiff $4,000,000 "[i]n full consideration for such services." Dkt. No. 42-1 at 20. The contract states that those payments are "in lieu of any and all other payments based upon prior, existing and future anerobic bio-digester projects acquired, developed, financed, constructed and/or operated by" the defendants and that the plaintiff "waives all rights to receive compensation" for those projects. Id. The plain text requires the conclusion that the contract was intended to compensate the plaintiff for the services it performed related to the defendants' transaction. Those were brokerage services. So, the letter agreement was a contract paying for brokerage services. Because the plaintiff is not a licensed broker, it cannot enforce the contract.

None of the plaintiff's arguments rebut this fact. The plaintiff's waiver of payments under the prior contracts does not change the plain meaning of the letter agreement. If anything, it supports the defendants' argument that this

13

contract was a contract for brokerage services because the new contract was intended to substitute for the original consulting and non-circumvention agreements—both of which were contracts for brokerage services. The letter agreement was a novation that changed the fee arrangement in the parties' pre-existing agreements for brokerage services. See Siva Truck Leasing, Inc. v. Kurman Distributors, Div. of S. Abraham & Sons, Inc., 166 Wis. 2d 58, 67–71 (Wis. Ct. App. 1991) (parties may substitute one contract for another through novation if all parties consent and sufficient consideration supports the new obligation). A novation does not change the character of a contract from a brokerage agreement to a settlement agreement. The plaintiff's argument that this is a settlement agreement because it pays for past services also fails. Services previously performed can be valid consideration for a contract to pay for those services without transforming the agreement into a settlement agreement. See Lemke v. Arrowood, 232 Wis. 2d 558 (Table), 1999 WL 1191501, at *3 (Wis. Ct. App. 1999) (citing Hooper v. O.M. Corwin Co., 199 Wis. 139, 144–45, (Wis. 1929); Silverthorn v. Wylie, 96 Wis. 69 (Wis. 1897)).

Because the parties' letter agreement is a contract to pay for brokerage services and the plaintiff is not a licensed broker, the contract is illegal and not enforceable. See Hiltpold v. T-Shirts Plus, Inc., 98 Wis. 2d 711, 716–17 (Wis. Ct. App. 1980) ("A contract is illegal where its formation or performance is expressly forbidden by a civil or criminal statute or where a penalty is imposed for doing the act agreed upon."). The court must dismiss the plaintiff's breach-of-contract claim.

14

### 2. *Unjust Enrichment*

As an alternative to its breach of contract claim, the plaintiff seeks to recover on unjust enrichment grounds. "A plaintiff may recover through quasi-contract unjust enrichment when the plaintiff confers a benefit on the defendant, the defendant is aware of the benefit, and the retention of the benefit would be inequitable." Abbott v. Marker, 295 Wis. 2d 636, 648 (Wis. Ct. App. 2006) (citing Halverson v. River Falls Youth Hockey Ass'n, 226 Wis. 2d 105, 115 (Wis. Ct. App. 1999)). "Unjust enrichment is grounded upon the moral principle that a party who has received a benefit has a duty to make restitution where retaining such a benefit would be unjust." Id. (citing Management Comp. Servs. v. Hawkins, Ash, Baptie & Co., 206 Wis. 2d 158, 188 (Wis. 1996)). But Wisconsin courts have declined to allow a plaintiff to recover in unjust enrichment as an alternative to a breach-of-contract claim where the contract is illegal and unenforceable. See Venisek v. Draski, 35 Wis. 2d 38, 50 (Wis. 1967) ("The general rule is that both at law and in equity a court will not aid either party to an illegal agreement, whether executory or executed, but leaves the parties where it finds them."); Jezeski v. Jezeski, 316 Wis. 2d 178 (Wis. Ct. App. 2008) (declining equitable remedies for conduct undertaken due to an illegal contract); Abbott, 295 Wis. 2d at 648 (affirming dismissal of unjust enrichment claim as an alternative form of recovery when underlying contract was illegal). And Wis. Stat. §452.20 could fairly be read to prohibit recovery for unlicensed brokerage services even in the absence of a valid contract. The statute states that no unlicensed broker may bring or

15

maintain an "action. . . for the collection of a commission or compensation for" brokerage services. Wis. Stat. §452.20. The statute does not limit its scope to breach-of-contract claims. By trying to recover in equity, the plaintiff still is seeking compensation for unlicensed brokerage services, which is prohibited. The court must dismiss the plaintiff's unjust enrichment claim as it seeks recovery for unlicensed brokerage services.

Although district courts generally give civil plaintiffs at least one opportunity to amend their pleadings after granting a motion to dismiss for failure to state a claim, the court need not do so "when 'it is certain' that amendment would be futile." See Fields v. Miller, Case No. 21-1419, 2022 WL 1011666, at *3 (7th Cir. Apr. 5, 2022) (citing Runnion *ex rel.* Runnion v. Girl Scouts of Greater Chi. & Nw. Ind., 786 F.3d 510, 519–20 (7th Cir. 2015)). Here, amendment would be futile because the plaintiff seeks payment for unlicensed brokerage services, which is prohibited by Wisconsin law. So, the court will dismiss the complaint and this case without leave to amend.

## V.     Conclusion

The court **GRANTS** the defendant's motion to dismiss. Dkt. No. 43.

The court **ORDERS** that this case is **DISMISSED WITH PREJUDICE**. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 29th day of June, 2026.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**

16